We will hear argument next in number 157055, Evans v. McDonald. Ms. Booth. Thank you, Your Honor. If it pleases the court, my name is Sandra Booth. I'm appearing on behalf of the appellant Ron Evans. Mr. Evans presents a very narrow legal issue today, but it's one which is of great interest in the veterans community. And that is under the Russell's CUE test, the third prong, which requires a manifest change in the outcome. What is that manifest change where the error under the first two prongs of the Russell test was simply the failure of the agency to recognize that the claim existed, and the failure with the consequence that the agency did not make a merits decision? This is based on a theory that the V.A.R.O. did not make an adjudication on the informal TDIU claim back in 1988. Is that right? It's correct, Your Honor. Under the court's jurisprudence in Roberson and certainly by Schoedl, there was an implicit denial. So that's what I'm trying to figure out. If your facts with Mr. Evans line up with the Roberson case, if here there was a ruling by the board that there was an implicit denial, which the Veterans Court affirmed, and you're not challenging or not sure you can challenge it. So with an implicit denial, that means that necessarily there was a finding that the V.A.R.O. did do a ruling on the merits in denying the TDIU claim in 1988. I would disagree with that, Your Honor. The regional office, the rating decision, which denied CUE in the first instance, made an express finding that there was no TDIU raised. That finding was, and since it wasn't raised, therefore there was no error, clear and unmistakable or otherwise, that finding was reversed by the Board of Veterans' Appeals in 2011. The board found that there was a TDIU claim presented on the record. So at that point, there is no merits decision, though the record plainly shows there was never a merits decision made. I guess I'm confused. What did the board mean then when the board went on to say that not only was there an informal TDIU claim presented in 1988, but that, in fact, the R.O. acted on it through an implicit denial? What does implicit denial mean? Is that somehow something different under the law than an express denial? Oh, yes. I believe it is, Your Honor. Where in our case law have we made that distinction between an implicit denial on the merits versus an explicit denial on the merits? Well, actually, I think in Roberson, the court held that the agency error was not a denial of TDIU, but rather the agency's failure to address the claim, which is exactly what happened here. Are you saying that when the agency implicitly denies a claim, it has not adjudicated the claim? Correct. Correct. It has not. Then what is the meaning of an implicit denial if it's not an adjudication? The court has stated in several cases, most recently I think in the January decision in Cogburn, that implicit denial is essentially a notice provision. It advances the interests of finality. The veteran is implicitly notified that for whatever reason his benefits have been disallowed, and therefore finality attaches under Roberson. And also, Andrews and DeShoto, although they don't expressly get to this issue, which is I think why we're here today, the court each time focuses on the failure to address the claim. Andrews says that it's the failure to address the claim, which is properly challenged by CUE. DeShoto says that the implicit denial of the claim, where the claim has been implicitly denied, if the veteran believes that the agency improperly failed to address his claim, which is what happened here, then his remedy is to either file a direct appeal, which Mr. Evans did not, or to file a request for CUE in an attempt to reopen the claim. Let me ask this. If we were to conclude that, as a legal matter, an implicit denial is the legal equivalent of an express denial, then what would be left of your appeal? I think there would be very little left of the appeal at that point. But in order to reach that conclusion, I believe you would have to overrule Roberson. Ms. Booth, you haven't, though, challenged. I mean, do you dispute that an implicit denial took place here? No, Your Honor. We agree that an implicit denial arose as a matter of law. So you're asking us, though, to say that an implicit denial, in the words of what Judge Chen was saying, that an implicit denial is not really a denial. And you haven't made that argument in the brief anywhere. Well, the implicit denial arises as a matter of law, certainly under DeShoto. That's our argument. We're not disputing that the finality attached under the implicit denial theory. That's correct. But the argument is that where the agency never reaches the merits because the agency didn't realize the claim was pending. But the agency is deemed to have realized it was pending via the fact of an implicit denial. I mean, that necessarily takes care of it, doesn't it? No, I don't believe so, Your Honor. I think the implicit denial arises by operation of law, not because the agency has clearly articulated or even declared. But it can arise. Assume that's the case. It does arise by operation of law. Still, it's there as a denial, which means, I think, that the claim has been addressed and denied. Well, it's been addressed, and the denial arises as a matter of law. Well, the CUE, then, one has to proceed down through the three prongs of the Russell test. What's the error? And the error here is the VA's failure, per Roberson, to recognize the claim, the failure to develop the claim to its optimum, as Roberson states, which is the clear and unmistakable error in the case. So I was focusing, I guess, a little bit on the Veterans Court opinion of page 6, which says the board simply determined that the appellant's argument that the RO committed CUE in failing to adjudicate the issue of TDIU must fail, as TDIU was indeed considered and implicitly denied. That sounds to me, in the April 1988 rating decision, that sounds to me like something more than implicit denial for finality purposes that the board, the Veterans Court is saying that the board concluded that it was actually considered and denied without discussion, but considered rather than some fictional legal, it must be deemed denied even without consideration. The... Which leaves one wondering whether there's a Roberson issue here at all, or Roberson, is that how it's said? Roberson. Roberson, sorry. I don't think the court... I don't think that once it was determined that the claim was presented on the record, and the regional office to this day denies that it was, it's a stretch to then conclude that a merits decision was made where the regional office to this day does not know that there was a claim. But how do we say that, as opposed to... I mean, maybe the Veterans Court, which has much broader reviewing authority than we do, in particular on factual determinations and applications of law to fact, which we can't do in a case like this not involving a constitutional claim. How do we question what the RO, whether the board was wrong in characterizing what the RO did in April of 1988? Well, because I think it comes back to what the Roberson case requires. The implicit denial... I don't think the agency can be said to secretly, in its mind, be making a denial, and that the Veteran should be... that the implicit denial of notice provisions give the Veteran notice that his claim has been denied just because the agency doesn't recognize it, does not even know there is a claim there. Once there was a determination by the board that there was, in fact, a claim made, then I think the board's jurisdiction at that point stopped, because there is no adjudication in the record, there is no trace of an adjudication on the merits in the record. I believe the board could only have remanded the case back to the regional office for the purpose of making that initial adjudication on the merits. You are into your rebuttal, so if you want to save your... Yes, I will. I think you reserved five minutes. Yes, thank you. May it please the court. We think the Veterans Court fully explored the issue that was presented in this case, as did the board, and construed the claim of Q as broadly as it could, given the attempted... Could we get to the question of implicit denial? Sure. And I'm just curious, does it encompass perhaps more than one thing? And what I mean by that is an implicit denial could be a situation where the agency actually does consider and evaluate a particular claim, but then denies it on the merits. It just does it implicitly, not expressly. That could be category one. And then maybe category two is some kind of deemed denial as a matter of law, where almost as a matter of legal fiction, the agency actually considered everything and denied it, but it didn't actually do any evaluation. What I'm wondering is how do you understand what is encompassed by the term implicit denial? I think both of those examples could be encompassed within the definition of implicit denial, whether they... If you say that, then how do we know what happened here? So the idea behind implicit denial, as the court explained in Deschotel and its progeny, if you will, is it's a notice provision. It came about in response to the pending claim theory, where claimants would come in years after a claim was denied and suggest that a claim was made to the regional office that was never adjudicated. So then we got to the situation where in some decisions by this court, there were remands holding that the claim was pending. Subsequent to that pending claim theory, we argued, no, although there may have been a claim which was impliedly raised or maybe even expressly raised, but when you read the decision, it's clear that although the regional office didn't clearly reject it or expressly reject it, only a reasonable person could come to... Any reasonable person reading the decision would come to the conclusion that it was rejected. The example being an individual who was seeking 100% rating for something and is awarded a 30% rating. So that person is clearly on notice that their argument about why they deserved 100% was considered and rejected because they only received 30%. So the two sort of evolved together in implicit denial. So Judge Chen, both of your examples of where the record, when you look back at it, as was the case here, when the board and court looked back at what the regional office did in 1988, especially in the context of the mental disability in which the ratings for mental disabilities somewhat mirror ratings for TDIU, the court said that anybody who was expecting extra scheduler relief in the form of a 100% extra scheduler award for the disability that he was seeking but who only received a 30% rating when the very scheduler rating itself is premised on the same concept in terms of the mental disability  which is distinguished from other scheduler ratings, which more physical ailments are determined. The rating schedule is determined by flexibility and these kinds of things. With the mental, though, it is about your ability to function, which is very similar to the same kinds of standards that are used for the TDIU awards. So in this case, we think the board and Infections Court properly noted, as they did in the evidence, that it was reasonable for Mr. Evans to understand in 1988 that his request for extra scheduler relief in the form of a 100% rating would have been denied or was denied, in fact, was denied implicitly in the decision below. So on this record, the findings by the Veterans Court and the Board of Veterans Appeals was that the TDIU possibility claim was in fact considered and evaluated and it was denied, but it was just denied implicitly. That's, I think, part one of what the board and Veterans Court did. I think part two was that they went ahead and actually looked at the evidence and said in any event, in this case, the evidence doesn't show total disability based upon individual unemployability. That's the board's part where they say... ...whether Mr. Evans was, in fact, it was undebatable that he was, in fact, unemployable back in 1988. And also a little bit of what is the proper legal inquiry for a key claim. But that would be based on a prior denial of a TDIU, not a nonadjudication of the TDIU. In order to get the cue, you have to have a cue of a finally decided denial, yes. So it makes sense to do that second. Right, but getting, just so I understand, Roberson. Roberson is a pleading. Whatever way we're going to call it. Roberson, I call it Roberson. All right, for now, we'll call it Roberson. In five minutes, I'll call it Roberson. There are plenty of cases in the... For now, Roberson, that case, that's a cue claim case, right? Where it was found that the VA never adjudicated the TDIU. And then under a cue claim theory, this court sent the case back to the VA to finally evaluate the never before adjudicated TDIU. Is that right? So Roberson is about pleading. So in Roberson, which was a cue claim, the idea is that not only does the Hodge fully developed claim argument theory that VA is required to do, and in Hodge, it was expanded to articulating what the pro se plaintiff is trying to argue, what the claim is. Subsequent then to Hodge, Roberson, the protections court held, well, that liberal construction of the pleadings doesn't apply to the actual record pleadings that are at issue in a cue proceeding. And this court said no. This court said not only... This court said you need to look back at those records to see if liberally construed there was such a claim raised, and if there was, then you need to consider it. So it's a little murky, but the idea is Roberson doesn't mean a failure to consider equals cue. Roberson means that in reviewing a case for a cue, the board and RO need to look and liberally construe not only the pleading for cue for the pro se plaintiff, but the argument that he was trying to make before. Like, did he actually make a claim for total disability in 1988? But that doesn't answer the overall cue question, because as this court said in Smayraj and in Andrews and other cases, Roberson didn't change this court's and the statutory requirement as evidenced in this court's decision in Cook where they thoroughly analyzed what's required for cue. That Roberson didn't change the requirements for cue in that there has to be an outcome determinative error based upon the evidence of record at the time. So if you look back at this case, there are... Can I just ask that the Veterans Court had a Part A and a Part B, and Part A says we don't see any problem. I'm just going to correct everything that I say that's wrong. That we don't see any problem with the boards having said the TDIU claim was in fact considered and denied. And then Part B says, even if it hadn't been, there's no clear and unmistakable error without some basis for thinking that down the road benefits might result as opposed to clear and unmistakable error being addressed, you have to address it. Is that second part immaterial to the outcome here if one accepts the first part? I don't know if I can answer the question, Your Honor, other than to try to articulate how I understand what the Veterans Court did here, which I think is my attempt to try to respond. So the Veterans Court was faced with, I think, a characterization of a cue error, which was somewhat limited in the sense that the argument seems to have been it's enough to deserve an award of cue if I can demonstrate that Roberson wasn't followed, and that I can demonstrate that the regional office should have considered TDIU. That seemed to have been at various stages an argument that was being established a Roberson error, I have ipso facto satisfied my cue requirement. The problem with that is a Roberson error is a pleading error. Let me try to understand this without referring to a case. I understood that the error alleged was failure to consider a TDIU claim. And I understood the first part of the Veterans Court decision to say we think the board got it right in saying there was no such failure. It was considered and it was denied. Why is there a second part of the decision? Because arguably... Can I just interject? My theory on why they kept going is that they said now that we are satisfied that the board is correct, that the RO in fact did deny the TDIU claim, we still think there could be something left in this appeal that says now that is there a cue claim for here on the denial, that earlier denial of the TDIU by the RO in 1988, and now we've got to figure out what's the standard for that. Okay, tell me why I'm wrong. I don't think you are, but I would add one caveat. The board did the same thing. I think the board reached the same conclusion. The board said, look, accepting your idea, what I'll call cabin view of cue, which we don't believe a Roberson error by itself could ever constitute cue because it divorces the outcome determinative aspect from the discussion. If you have an example where the board did not address a TDIU claim that was raised, and we don't have, unlike this case, an analysis or a record upon which we could say, no, they actually did implicitly deny it, that shouldn't get you cue because you haven't necessarily changed the legal relationship between the parties. That is how I understand what I understand the Part B, starting at page 6, to hold, and I think this gets back to what we started with here. Does that have any effect on this case if one accepts Part A that says, the error alleged was failure to consider unemployability. There was no such failure. It was considered. I would agree that. As I understand it, I think you agree, we can't disagree with Part A. Because it's not really raised. Well, it's not legal. Is that right or is that wrong? Well, yeah. Had there been, I don't think any issue has been presented to this court about Part A upon which this court could opine. There are questions that we were talking about, about implicit denial, which I think are all correct. I think the analysis was correct here by both the Board and the Veterans Court with respect to how implicit denial, especially in this case, would have identified the fact that, no, your argument that something wasn't considered was actually considered. Okay, but to finish off Judge Taranto's point, then if that is true about Part A, then there's nothing left for us to do with respect to anything that was said on Part B. I don't think you need to go there, as we indicate in our papers. If you do, we have a... It would be dicta. It would be recreational. It would be extracurricular. Yes, although it would clarify the point we would like made, which is you can't have... Well, there's a problem. Unless the court were to find that the cue argument was broader and that that was what was being addressed, yes, you would need to go further. If you hold the argument to what the cue argument was, which was rejected in Part A, that should be the end of the story. We don't think that's a valid cue argument. We would love the court to say it's not a valid cue argument because you have to consider outcome-determinative error in here. But we can't say anything here. We, the Federal Circuit, can't say anything here because the board and the Veterans Court have already covered that base as well and denied it. Stocky, I'd like to ask just one question. I realize the point about not having to get to the second point where the board said and the court affirmed the board that even if you look at the evidence below, there was not enough evidence to establish clear and unmistakable error. Now, Ms. Booth said the board didn't have jurisdiction to get to that. She said that in a brief, I think. What's your argument to that? I've read the decisions below. I think this all goes to how do you interpret the cue claim that was being proffered. The board has, starting with the regional office, the regional office, the bulk of the limited analysis that's contained in that decision, appears to focus on the Part A. But the last line, which talks about the evidence doesn't establish anything, that there should be no change in benefits, supports a Part B conclusion. So an argument can be made that the RO itself recognized that perhaps, although not required under Andrews, giving illiberal construction to the pleading, said, okay, here, we're going to look at the more narrowly focused cue claim, but the relevant analysis should be can this individual establish that he was entitled to TDIU at the time. And so you could read the regional office decision to hold that. Clearly, you can read the board decision to hold that because they go in and specifically do it, and then the veterans court. So with that, then no, I don't believe there would be any need for a remand. I believe that what was done here. But she said the board didn't have jurisdiction. They would have had jurisdiction because they would have been, you could look at it two different ways. Either they interpreted her cue claim to include Part B, or you could argue under 5109A or the 3.105 regulation, which provides the secretary with the option to raise the argument on its own motion, that that's what happened here. The idea would be that this issue, both A and B, have been so thoroughly addressed by both the board and the veterans court that we don't feel there would be any need for a further remand. Mr. Hockey, I know we're out of time, and I'm sorry, but I just want to follow up on your conception of Roberson. I'll be honest right now. When I read that opinion, I thought, well, maybe there's another way to get cue relief beyond what I think the Justice Department would think. And in a situation where, on those facts, the agency did not consider the informal TDIU claim, and then the person later on files a cue claim, then this court said, well, it was never considered. It needs to be considered. Roberson was raised in Cook and addressed by the court, page 1347 of 318F3. So Cook is your anchor for the cue analysis. I mean, Bustos and these other case peers came first, but the en banc argument in Cook was about cue. When can you have cue? Can you have an exception to the two congressionally authorized exceptions to finality? Other than those two, grave procedural error being the argument, which is akin to failure to do something, right? Failure to consider a TDIU implied. So I would respond, Your Honor, by saying no. I think the court, in issuing its Cook decision, was fully aware of its prior decision in Cook. I mean, Roberson felt no reason at that time to read a third exception to finality into what had already been identified by Congress as the two exceptions, new material evidence and cue. Thank you, Mr. Hockey. Ms. Booth, you have four and a quarter minutes. Thank you, Your Honor. I have just a few replies to Mr. Hockey's arguments. First of all, I find it ironic that the government is saying that Mr. Evans should be denied the remedy of revision, but it only can make that argument if we first allow the government to open up the 1988 decision, insert an express decision, explain why that decision, why the agency reached that decision, and snap that decision back shut and tell Mr. Evans, now you go prove that this is clear and unmistakable. Comer indicated that the VA benefits system is not intended to be a stratagem for the unwary and that the purpose is not to defeat claims but rather to allow claims that can be allowed under law. The notion that the agency may silently deny a claim, silently make an express denial, is to me illogical. Article 3.103 clearly implicates a written decision because it requires the agency to tell the veteran not only what the decision was but also to explain the reasons for it. So that clearly would suggest to me that a silent decision known only to the VA is not a denial on the merits. We would submit that if there is to be an explicit denial or is to be an actual merits adjudication, it must be articulated someplace in the paperwork. That hasn't happened in this case. Is that a broad, what you just said, a kind of broad challenge to the decisions of ours that do recognize this entity called an implicit denial? I'm sorry, I don't understand. Did you just make an argument that says the cases of ours that recognize that there can be a denial that is implicit are wrong? Or have I misunderstood what seems like a broad scope of what you just said? No, I'm not. What I'm saying is the implicit denial arises as a matter of law, but none of the cases suggest that it constitutes a merits adjudication, that it was a merits denial. It's simply a notice provision in the interest of finality. But there's no suggestion that it constitutes a decision on the merits, and that's the clear and unmistakable error. But what do we do with the Veterans Court decision that Judge Toronto quoted earlier, right here in your case where the Veterans Court described the board as finding that the TDIU claim was in fact considered and evaluated and denied, albeit implicitly, but nevertheless evaluated and denied? Well, I think as a matter of law that would be error, because a silent decision of which there is no trace of in the record cannot be a merits adjudication. I would suggest that the Veterans Court was simply in error on the wall in that regard. I didn't see you argue that in your briefs, though. And this is a case, I don't remember the details, but I think Mr. Hockey made reference to how in this case the disability was a mental disability from which maybe not a logical implication, but a reasonably strong factual implication would be if you're only 30% mentally disabled, to use a shorthand, then there's basically no way we're going to find unemployability, whereas some other scheduler disability 30% ratings might still leave you more plausibly unemployable, but not this one. I would disagree with that, Your Honor, disagree with Mr. Hockey, because the scheduler rating, even a total scheduler rating, is not the same standard as the TDIU rating. And again, that's something that was discussed in the Roberson case, so a denial of a higher scheduler rating... Right, but I guess I took his point to be at least suggesting, maybe even expressly indicating, that not all scheduler ratings have the same implications or lack of implications for unemployability. The mental disability one perhaps does. Well, I would disagree with that, too, Your Honor. 4.16b clearly contemplates that unemployability may be available to a veteran who has a 30% rating, and I don't see any distinction in the regulations where that applies only to physical disabilities versus mental disabilities. I think it would require a factual assessment in each case as to whether or not the veteran's psychiatric symptoms themselves prevented him from obtaining and retaining substantially gainful employment, but that's not a scheduler standard. I think your time has elapsed, unless you have a final word. Thank you, Your Honor. Thank you. The case is submitted, and we're done. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.